**Richard MORALES, Plaintiff–Appellee–Cross–Appellant,**

v.

**Harry I. FREUND & Jay S. Goldsmith, Defendants–Appellants–Cross–Appellees,**

**New Valley Corporation, Defendant–Cross–Appellee.**

**Docket Nos. 98–7597, 98–7647.**

**United States Court of Appeals, Second Circuit.**

Argued Dec. 18, 1998.

Decided Jan. 12, 1999.

David Lopez, Southhampton, NY, for Plaintiff–Appellee–Cross–Appellant (Albert D. Barnes, of counsel).

Jay G. Strum, Kaye, Scholer, Fierman, Hays & Handler, New York, NY, for Defendants–Appellants–Cross–Appellees.

Before: MESKILL and CALABRESI, Circuit Judges, and POLLACK, District Judge.*

CALABRESI, Circuit Judge:

Defendants Freund and Goldsmith each earned nearly one million dollars trading in the stock of defendant New Valley Corporation between March and September of 1994. Plaintiff Morales, a shareholder in New Valley, brought suit against Freund and Goldsmith pursuant to § 16(b) of the Securities Exchange Act of 1934 (the " '34 Act"), 15 U.S.C. § 78p(b), which provides that beneficial owners of more than ten percent of any class of an equity security must turn over, to the issuer of that security, any profits earned from a purchase and sale of the securities of that issuer if the purchase and sale are separated by less than six months.[1] Before the United States District Court for the Southern District of New York (Charles S. Haight, J.), the defendants argued that they are not within § 16(b) because they were never owners of ten percent of a class of equity security. They contended that the particular kind of security on the basis of which § 16(b) liability was alleged, namely the B preferred stock of New Valley, does not constitute a separate "class" of equity security under the '34 Act. *See Morales v. New Valley Corp.*, 936 F.Supp. 119 (S.D.N.Y.1996) ("*Morales I*"). They also pointed out that they had never personally owned more than ten percent of even the B preferred and asserted that an agreement between them and another group of stockholders who did own more than ten percent should not be considered sufficient to deem Freund and Goldsmith "beneficial owners" of the other holders' securities. *See Morales v. New Valley Corp.*,

---

* The Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation.

1. Section 16(b) reads in pertinent part:
   "For the purpose of preventing the unfair use of information which may have been obtained by [a covered] beneficial owner ... by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months ... shall inure to and be recoverable by the issuer.... Suit to recover such profit may be

instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request...."
15 U.S.C. § 78p(b) (1994). The previous subsection of the statute defines which beneficial owners are covered. It specifies that § 16(b) reaches "Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered pursuant to 78*l* of this title...." *Id.* § 78p(a).

999 F.Supp. 470 (S.D.N.Y.1998) ("*Morales III* ").

The district court ruled against the defendants on both contentions and entered judgment for the plaintiff. *See Morales I*, 936 F.Supp. at 126; *Morales III*, 999 F.Supp. at 477. The district court declined, however, to order the defendants to pay prejudgment interest on their disgorged profits. *See Morales III*, 999 F.Supp. at 477. The defendants appeal the district court's decisions on liability, and the plaintiff cross-appeals seeking prejudgment interest. We affirm, adopting the reasoning of the district court except as specifically stated in this opinion.

## BACKGROUND

The facts of this case are set out in *Morales I* and *Morales III*.[2] We repeat only a brief outline, relying on the opinions of the district court for a fuller treatment.

New Valley Corporation is the successor to Western Union. It has issued three kinds of equity securities: common stock, senior A preferred stock, and convertible B preferred stock. New Valley was placed in involuntary bankruptcy in 1991, and in January 1994 the bankruptcy court invited all interested parties to file plans of reorganization. In February 1994, three parties proposed plans under which no distribution would have been made to holders of B preferred stock. Shortly thereafter, a consortium of holders ("Holders") of B preferred took steps to protect their equity.[3] They entered into a contract with a corporation called Veritovtrade, which is "engaged in the business of investing in, and advising others about, distressed corporations." Under the agreement, Veritovtrade pledged to use its best efforts to maximize the value that the Holders would receive for their B preferred under any plan of reorganization. That pledge expressly included a best-efforts commitment to obtain voting control of New Valley's common stock for the Holders, if doing so would maximize

the value of their B preferred. Veritovtrade's compensation was to be indexed to the value of the B preferred. The Holders also granted Veritovtrade a right of first refusal on any sale of their B preferred.

Defendants Freund and Goldsmith are two of the three owners of Veritovtrade. In the weeks after the Holders and Veritovtrade executed their agreement, Freund and Goldsmith each purchased almost 50,000 shares of New Valley B preferred. Then, within the six-month period prescribed in § 16(b), they sold most of their B preferred at substantial profits. *See Morales III*, 999 F.Supp. at 472.

Morales filed suit against the defendants on February 22, 1995, seeking disgorgement of short-swing profits and other appropriate relief. The defendants moved to dismiss, arguing that they were not within the scope of § 16(b) because they were not the beneficial owners of ten percent of a class of equity security. *See Morales I*, 936 F.Supp. at 120. Specifically, they claimed that the B preferred stock is not a "class" of equity security unto itself but rather part of a larger class, either the class of preferred stock generally or—if converted into common stock—the class of common stock. *See id.* In neither case would their holdings of B preferred constitute more than ten percent of the larger class. *See id.* at 122. The district court denied the defendants' motion, ruling that the B preferred stock is a separate class of equity security. *See id.* at 126.

The defendants later moved for summary judgment, arguing that even if the B preferred were a separate "class" of equity security, § 16(b) still did not apply to them because they were not the beneficial owners of ten percent of the B preferred. *See Morales III*, 999 F.Supp. at 472. At the peak of their ownership, each defendant owned only 50,500 shares of B preferred out of a total of 2.8 million outstanding shares. The district court rejected this argument. It found that

2. As implied by this numbering system, there was also another decision by the district court—*Morales II*—in the course of this litigation. *See Morales v. New Valley Corp.*, 968 F.Supp. 139 (S.D.N.Y.1997). *Morales II* concerned a failed attempt to add another defendant to the suit and is not important to the disposition of the present appeal.

3. The Holders are Edward S. Gutman of New York, NY; Spear, Leeds & Kellogg, of New York, NY; and J & S Investment & Company of Tenafly, NJ.

the defendants should be deemed the beneficial owners of not only their own B preferred but also of that owned by the Holders. *See id.* at 475–76. According to the court, the agreement between Veritovtrade and the Holders made those two entities a single "group" as defined by the relevant provisions of the '34 Act. *See id.* at 476. And together, the defendants and the Holders owned well more than ten percent of the B preferred.

The district court therefore denied the defendants' motion for summary judgment and, pursuant to a cross-motion, granted summary judgment for the plaintiff. *See id.* at 477. It declined, however, to award prejudgment interest, explaining that the case was a close one and that it did not believe the defendants had acted in bad faith. *See id.*

The defendants now appeal the finding of liability, challenging the district court's decisions in both *Morales I* and *Morales III*. The plaintiff cross-appeals the district court's failure to award prejudgment interest.

## DISCUSSION

I. Was the B preferred stock a separate "class" of equity security?

■ On this question, we substantially adopt the reasoning of the district court in *Morales I*. We add only one observation. Each kind of preferred stock—A and B—votes alone on matters affecting that particular kind of shares. For example, a vote of the A shares would be required before more A shares could be issued. *See Morales I*, 936 F.Supp. at 121. New Valley is in bankruptcy, and this feature of the voting structure has particular import in the bankruptcy context. Under the bankruptcy code, a two-thirds vote of a class of interests is required for approval of a reorganization plan. *See* 11 U.S.C. § 1126(d) (1994). Accordingly, any

vote to approve one of the reorganization plans that would have impaired the B preferred stock would have also required a vote of the B shares acting separately. Moreover, the capacity to influence such a vote would more than likely affect the market's valuation of the B shares. One need not go further to find that a core object of § 16(b)—the avoidance of short-swing profit by investors who trade in stocks whose value they may be able to influence—is implicated in the case before us.

This entire litigation arose from circumstances in which owners of B shares sought to protect their holdings against an adverse reorganization. Given that a separate vote of the B shares would have sufficed to block such a reorganization, the B shares were certainly distinct enough to constitute a separate class of equity security under § 16(b). An important event was looming in the life of the corporation, and it was an event as to which any large holder of B preferred would, because of such holdings, be in a position to exercise substantial control and to have substantial foreknowledge.

II. Were the defendants beneficial owners of ten percent of the B preferred stock?

On this question, we reach the same conclusion as the district court, but for a different reason. One of the conditions under which § 16(b) considers two or more persons to be a single beneficial owner of securities is if they act together, or agree to act together, "for the purpose of acquiring ... securities of an issuer." 15 U.S.C. § 78m(d)(3) (1994); *see also* 17 C.F.R. § 240.13d–5(b)(1) (1998).[4] The district court believed that this provision did not bring the current defendants within the reach of § 16(b).

4. The SEC rules promulgated under § 16(a) of the '34 Act, 15 U.S.C. § 78p(a), which contains the definition of "beneficial owner" as that term is used in § 16(b), state that "for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities ... the term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder." 17 C.F.R. § 240.16a–1(a)(1). Section 13(d) of the Act states, in pertinent part, "When two or more persons act as a partnership, limited partnership, syndicate, or

other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection." 15 U.S.C. § 78m(d)(3). The language of 17 C.F.R. § 240.13d–5(b)(1), promulgated under 13(d), is very much the same. It says, "When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership ... of all equity securities of that issuer beneficially owned by any such persons."

■ The district court correctly noted that the agreement between Veritovtrade and the Holders required Veritovtrade to acquire stock: Veritovtrade pledged to use its best efforts to secure voting control of New Valley's common stock for the Holders, if doing so would help maximize the value of the Holders' B preferred. *See Morales III,* 999 F.Supp. at 475.[5] But the district court reasoned that the agreement to acquire New Valley's common stock only made Veritovtrade and the Holders a "group" insofar as that particular class of stock was concerned. It did not, Judge Haight concluded, make Veritovtrade and the Holders a group with regard to other securities and specifically with regard to the B preferred that is at issue in the instant case. *See id.*

We disagree. The statutory and regulatory provisions governing group status do not restrict a group's salience to the particular class of security that its constituent members have combined to acquire, hold, vote, or dispose. On the contrary, the regulations make clear that a group member is deemed to have beneficial ownership of the group's holdings of any equity securities of the issuer. *See* 17 C.F.R. § 240.13d–5(b)(1) ("When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership ... *of all equity securities of that issuer* beneficially owned by any such persons." (emphasis added)). The existence of a group under § 13(d) and § 16(b) is not confined to the particular security that makes it a group; it extends to all securities issued by the issuer of that security. Veritovtrade and the Holders made an agreement regarding the acquisition of New Valley *common* stock; they are therefore a group with regard to all of New Valley's equity securities, *including the B preferred.*

Because we affirm the district court's result in *Morales III* on this ground, we need not address any of the other reasons on

account of which Veritovtrade and the Holders might also be a group.

**III. Prejudgment interest**

■ Prejudgment interest is generally awarded as part of § 16(b) recoveries, but the question of whether such interest should be given in a particular case is within the discretion of the trial court. *See Whittaker v. Whittaker Corp.,* 639 F.2d 516, 533 (9th Cir.1981). At the end of a well considered series of opinions, the district court suggested that the defendants, though liable, might well have acted in good faith. It therefore declined to award prejudgment interest. *See Morales III,* 999 F.Supp. at 477. We do not believe that the district court abused its broad discretion in so deciding.

## CONCLUSION

The judgment of the district court is affirmed.

---

5. It does not matter for present purposes that the agreement was conditional. A "group" under § 13(d) and § 16(b) need not be committed to acquiring, holding, voting, or disposing of securities on a specific set of terms. All that is re-

quired is that the members of the group have combined to further a common objective with regard to one of those activities. *See Wellman v. Dickinson,* 682 F.2d 355, 363 (2d Cir.1982).