Barbara **SCHAFFER**, Derivatively on behalf of Lasersight Incorporated, Plaintiff,

v.

**CC INVESTMENTS, LDC, Castle Creek Partners, LLC, Societe Generale, Shepherd Investments International, Ltd., Stark International, Brian J. Stark, Michael A. Roth, and Lasersight Incorporated, Defendants.**

### No. 99 CIV. 2821(VM).

United States District Court, S.D. New York.

Sept. 29, 2000.

---

Glenn F. Ostrager, Joshua Seth Broitman, Ostrager, Chong, Flaherty & Onofrio, P.C., New York, NY, Paul D. Wexler, Bragar, Wexler, Eagel & Morgenstern, L.L.P., New York, NY, for Barbara Schaffer.

Scott A. Edelman, Milbakn, Tweed, Hadley & McCloy LLP, New York, NY, for CC Investments, LDC, Castle Creek Partners, LLC.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Barbara Schaffer ("Schaffer") brings this action under Section 16(b) of the Securities Exchange Act of 1934 (the "Act") for disgorgement of short-swing profits allegedly obtained by defendants acting as a group in violation of that section of the Act. Three motions for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) are presently before the Court.

Defendants CC Investments, LDC ("CCI") and Castle Creek Partners, LLC ("CCP") have argued that CCI was not, either individually or as member of a group, the beneficial owner of more than 10% of Lasersight's equity securities and that CCI is therefore not liable under Section 16(b). Defendant Societe Generale ("SG") has argued that it was not a member of any group and that certain restrictions on its ability to convert and sell shares to which it agreed preclude Section 16(b) liability. Defendants Shepherd Investments International, Ltd. ("SII"), Stark International ("SI"), Brian Stark ("Stark") and Michael Roth ("Roth") (collectively, the "Stark Defendants") have argued, among other things, that they were not beneficial owners of more than 10% of Lasersight's stock. For the reasons set forth below, the Court grants the motions to dismiss in their entirety, but grants Schaffer leave to replead.

## BACKGROUND

Schaffer is a New York resident and an owner of the common stock of Lasersight Incorporated ("Lasersight" of the "Company"). Lasersight, a nominal defendant, is a Delaware corporation with its principal place of business in St. Louis, Missouri.

Defendants are CCI, a limited liability company organized under the laws of the Cayman Islands engaged in the business of trading in securities; CCP, an American limited liability company acting as CCI's investment manager; SG, a division of Societe Generale Securities Corporation engaged in trading securities; SII, a corporation organized under the laws of the British Virgin Islands that trades securities; SI, a Bermuda corporation trading securities; and Stark and Roth, investment fund managers who control the investment decisions of SII and SI.

Defendants participated in a private placement in 1997 designed to raise money for the Company so that it could purchase

certain patents from IBM. The private placement was a sale to private investors of 1600 shares of Series B Preferred Stock and Warrants to purchase 790,000 shares of Lasersight common stock.

Schaffer alleges that these seven defendants constitute a group (the "Group") and that SII and SI constitute a separate group (the "SI Group") for purposes of determining liability under Rule 16a–1(a)(1) and Sections 16(b) and 13(d)(3) of the Act; that the Group, the SI Group and CCI individually were greater than 10% beneficial owners of Lasersight's common stock; and that the Group, the SI Group and CCI engaged in certain transactions over a six month period, garnering short-swing profits in the amount of at least $7,091,975.00, all of which are disgorgeable to Lasersight under Section 16(b).

## DISCUSSION

### I. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, the Court must accept Liner's factual allegations as true and draw all reasonable inferences in his favor. *See Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59 (2d Cir.1997). It is the Court's task to assess the legal sufficiency of the complaint and not to judge the credibility of the pleadings or to assess the weight of any evidence offered in support of the action. *See Cooper v. Parsky,* 140 F.3d 433 (2d Cir.1998). A claim may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Morris v. Local 819, Int'l Bhd. of Teamsters,* 169 F.3d 782, 784 (2d Cir.1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

As Schaffer notes, "the only issue before the Court is whether or not the complaint states a set of facts under which defendants can be liable to disgorge their profits under Section 16(b) of the Securities Exchange Act of 1934." Plaintiff's Memorandum in Opposition, dated Dec. 1, 1999, at

7–8. *See* Transcript from Oral Argument, dated June 2, 2000 ("Tr."), at 54–55.

### II. CONVERSION CAPS

The Corrected Certificate of Designations, Preferences, and Rights states:

> The Preferred Stock shall not be convertible by a Holder to the extent (but only to the extent) that, if converted by such Holder, the Holder would beneficially own in excess of 4.9% (9.9% if the applicable box on the signature page of the Securities Purchase Agreement for such Holder is marked) . . . of the shares of Common Stock.

Declaration of Scott A. Edelman, sworn to Sept. 13, 1999, Ex. 2–A, IV.G.(ii). The Warrants Agreement states:

> Notwithstanding anything to the contrary contained herein, the Warrants shall not be exercisable by the Holder to the extent (but only to the extent) that, if exercisable by Holder, Holder would beneficially own in excess of 4.9% (9.9% if the applicable box on the signature page of the Securities Purchase Agreement for such Holder is marked) . . . of the shares of Common Stock.

*Id.,* Ex. 2–B, 7.(f).

Based on the foregoing provisions, defendants have argued that contractual conversion caps restricted their ability to convert Lasersight Preferred Stock into common stock if they would acquire more than a certain percentage of common stock as a result of the conversion, thereby precluding liability under Section 16(b). Each defendant had the option to elect to have a cap of either 4.9% or a 9.9% as the percentage of the total outstanding common shares it could acquire.

Defendants have noted that the Second Circuit considered and found that conversion caps were appropriate (*see Levner v. Alwaleed,* 61 F.3d 8 (2d Cir.1995)) and that several district courts have addressed the issue since *Levner* and approved such caps. *See Levy v. Marshall Capital Mgt., Inc.,* No. 99 Civ. 3428

(E.D.N.Y. July 26, 2000) (Amon, J.); *Levy v. Southbrook Int'l Investments, Ltd.*, No. 99 Civ. 1480, 2000 WL 567008 (S.D.N.Y. May 10, 2000) (Buchwald, J.); *Global Intellicom, Inc. v. Thomas Kernaghan & Co.*, No. 99 Civ. 342, 1999 WL 544708 (S.D.N.Y. July 27, 1999) (Cote, J.). In opposition to the motions, Schaffer relies on *Schaffer v. Capital Ventures Int'l*, No. 98 Civ. 3900, Tr. at 31 (S.D.N.Y. Sept. 13, 1999) (Hellerstein, J.) and argues that Section 16(b) applies here because under the "ATM theory" defendants could purchase 9.9% of Lasersight common stock, sell the common stock and then purchase more stock, thereby disposing of more than 10% of common stock without ever holding 10% at any one time.

Judges Cote, Buchwald and Amon thoroughly considered the effectiveness of contractual limits on share ownership to avoid Section 16(b) liability and concluded that holders of convertible securities with conversion caps are not statutory insiders under Section 16. This Court finds the decisions of Judges Cote, Buchwald and Amon to be thoughtful and well-reasoned and declines to follow the rationale set forth by Judge Hellerstein.

In this case, the Stark Defendants elected a 9.9% cap so that these four defendants could only hold collectively 9.9% of Lasersight common stock. SG and CCI each opted for a cap of 4.9%. The issue of a conversion cap is relevant here in so far as it proves insufficient as a matter of law Schaffer's allegations that CCI—on its own—was a greater than 10% beneficial owner; that the SI Group was a greater than 10% beneficial owner; and that both CCI and the SI Group garnered short-swing profits disgorgeable to the Company. Compl., ¶ 12. To the extent that the other defendants may have still combined efforts and ownership up to their individual cap limits does not impair Schaffer's allegations that all seven defendants comprised the Group.

## III. *THE "GROUP" ALLEGATIONS*

▇ Schaffer has alleged that all seven defendants constitute the Group and that SII and SI comprise a second group of their own. Compl., ¶ 12. Schaffer claims that there is a § 13(d) group "[s]o long as there is evidence that the parties intended to act in concert" or "had an understanding or arrangement regarding the acquisition, holding, ownership or disposition of securities." *See* Plaintiff's Memorandum in Opposition, dated Dec. 1, 1999, at 14, 18. The key question for the Court to resolve here is whether the complaint sufficiently alleges that defendants "agree[d] to act together for the purpose of acquiring, holding, voting or disposing of equity securities of" Lasersight. 17 C.F.R. § 240.13d–5(b)(1). The Court concludes that the "group" allegations of the complaint are insufficient based on the present record.

The Second Circuit has noted that "the touchstone of a group within the meaning of Section 13(d) is that the members combined in furtherance of a common objective." *See Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir.1982). A group under Sections 13(d) and 16(b) "need not be committed to acquiring, holding, voting, or disposing of securities on a specific set of terms," but the group members must have combined "to further a common objective with regard to one of those activities." *Morales v. Freund*, 163 F.3d 763, 767 n. 5 (2d Cir.1999). The "concerted action ... need not be expressly memorialized in writing" *Wellman*, 682 F.2d at 363, but "absent an agreement ... a 'group' would not exist." *Corenco Corp. v. Schiavone & Sons, Inc.*, 488 F.2d 207, 217 (2d Cir.1973).

In this case, defendants were brought together at the behest of and for the benefit of Lasersight during a private placement, the purpose of which was to raise money to allow the Company to purchase IBM patents. The private placement was effectuated through a placement agent and resulted in the sale of Preferred Stock and Warrants to private investors.

Schaffer, however, advances no allegations of interrelationships, contracts, alliances, meetings, agreements, coordinated

activity, or understandings between or among any of the defendants regarding the conversion of preferred shares, the sale of common stock upon conversion or any other issue. There are no allegations that the three camps (CC and CCI; SG; and the Stark Defendants) were under common control or shared directors or officers; had any prior or subsequent relationship with one another except that they participated in the same private placement; or had any relationship with the placement agent. Moreover, Schaffer has not alleged "common objectives to control the stock price or effectuate a shift in corporate control, the ability of the group members to exert influence over the corporation, and the voluntariness of the agreement to acquire, hold, or dispose of stock." *Morales v. Quintel Entertainment, Inc.*, 72 F.Supp.2d 344, 348 (S.D.N.Y.1999). Finally, the complaint contains no allegations specifying the basis for Schaffer's conclusory statements. While Schaffer has alleged certain facts based on information and belief, she has failed to indicate "the source of its information and the reason for [her] belief." *Trans World Corp. v. Odyssey Partners*, 561 F.Supp. 1315, 1323 (S.D.N.Y.1983). On the present record, the facts appear to demonstrate nothing more than parallel investment decisions by defendants all of whom agreed to participate at the same time in the same private placement. Simply put, there is no evidence before the Court that defendants agreed to combine efforts in furtherance of any commonly held objective.

The Court recognizes that under the private placement arrangement, an issuer like Lasersight may treat private investors such as defendants as a "group" because they may be receiving some of the same benefits, but Section 16(b) is "a prophylactic measure designed to deter insider short-swing trading." *Feder v. Frost*, 220 F.3d 29 (2d Cir.2000). While Section 16(b)

is equally concerned with stock acquired in a private placement, as compared with stock acquired in the open market, to allow Schaffer to proceed with this litigation on the basis of her present allegations would have a chilling effect on the world of private finance. Accordingly, the Court grants defendants' motions to dismiss because Schaffer has not set forth sufficient evidence of a common objective and the complaint's characterization of defendants as a "group" based on the present record is unsupported by the facts. *See Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972) ("unadorned allegations" based on "unmitigated speculation" that defendants are acting as a group are inadequate to sustain a Section 13(d) claim). The Court, however, provides Schaffer with 30 days within which she may file an amended pleading with additional facts supporting the notion that defendants shared such an objective and were not simply acting in connection with the Lasersight private placement.[1]

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion to dismiss of CC Investments, LDC and Castle Creek Partners, LLC is granted in its entirety; and it is further

**ORDERED** that the motion to dismiss of Societe Generale is granted in its entirety; and it is further

**ORDERED** that the motion to dismiss of Shepherd Investments International, Ltd., Stark International, Brian Stark and Michael Roth is granted in its entirety; and it is further

**ORDERED** that the Clerk of Court shall enter judgment for Defendants; and it is further

**ORDERED** that if plaintiff Barbara Schaffer serves and files an amended

---

1. Even though the Court invited the Securities & Exchange Commission ("SEC") to submit an amicus brief concerning whether the SEC had the authority to promulgate Rule 16a–1(a)(1) and heard from an SEC lawyer during oral argument, the Court need not address this issue for purposes of resolving the instant motions. In any event, the Second Circuit recently found that the SEC had such authority. *See Feder*, 220 F.3d at 35.

pleading within thirty (30) days of the date of entry of this Order, the Clerk of Court shall restore this action to the calendar.

**SO ORDERED.**