Barbara SCHAFFER, Derivatively
and on behalf of Lasersight,
Inc. Plaintiff,

v.

CC INVESTMENTS, LDC; Castle Creek
Partners, LLC; Societe Generale
Shepherd Investments International,
Ltd.; Stark International; Brian J.
Stark; Michael A. Roth, and Laser-
sight, Inc., Defendants.

No. 99 CIV. 2821(VM).

United States District Court,
S.D. New York.

Aug. 1, 2001.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Barbara Schaffer ("Schaffer") brings this action pursuant to § 16(b) of the Securities Exchange Act of 1934 (the "Act") for disgorgement of short-swing profits allegedly obtained by defendants acting as a group in violation of that section of the Act. Three motions for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) were previously granted by this Court in its September 29, 2000 Decision and Order. *See Schaffer v. CC Investments*, 115 F.Supp.2d 440 (S.D.N.Y.2000) (herein "*Schaffer I*"). Thereafter, Schaffer amended her complaint, in accordance with leave granted therefor in the dismissal Order. The defendants (herein collectively the "Defendants") then moved to dismiss the Amended Complaint. These three motions are presently before the Court.

The Court will not revisit the particulars describing the parties or issues presented previously, familiarity with which is assumed, but will only address issues arising from the challenges to the Amended Complaint, including: (1) whether a common objective of controlling the stock of Lasersight, Inc. (the "Company") or manipulating its stock price is necessary for the existence of a group within the meaning of § 13(d) of the Act, and (2) whether preferred stock is exempt from the definition of "equity securities" under § 13(d) of the Act. For the reasons set forth below, the Court denies each of the motions to dismiss, and will allow Schaffer to pursue limited discovery within a time frame to be specified.

## DISCUSSION

### I. STANDARD OF REVIEW

In considering a Fed.R.Civ.P. 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the non-movant's favor. *See Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59 (2d Cir.1997). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint, because "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *See Lerner v. Millenco*, 23 F.Supp.2d 337 (S.D.N.Y.1998) (citing *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996)). Finally, a claim may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *See Morris v. Local 819, Int'l Bhd. Of Teamsters*, 169 F.3d 782, 784 (2d Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### II. COMMON OBJECTIVE

In their motion papers, Defendants have argued, among other things, that in order to constitute a § 13(d) group there must exist a common objective among the defendants to exercise control over the Company or to manipulate its stock price. They contend that Schaffer's failure to allege such an objective renders the complaint insufficient to state a § 13(d) group claim. While Schaffer concedes that there are no allegations of a common objective to control the Company specifically or to manipulate its stock price, Schaffer argues that such factors are not determinative of group formation. In light of the Second Circuit's recent decision in *Morales v. Quintel Entertainment Inc.*, 249 F.3d 115

(2d Cir.2001), which was decided subsequent to *Schaffer I*, the Court agrees with Schaffer.

In *Quintel*, the Second Circuit, following the guidance provided by the SEC, held that the agreement required by § 13(d)(3) need not be one to gain corporate control or to influence corporate affairs. *See Quintel*, 249 F.3d at 125 (citing *Mosinee Paper Corp. v. Rondeau*, 500 F.2d 1011, 1015–16 (7th Cir.1974), *rev'd on other grounds*, 422 U.S. 49, 55, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975)). The plain language of § 13(d)(3) requires only an agreement "for the purpose of acquiring, holding, or disposing of securities." 15 U.S.C. § 78m(d)(3). This provision does not mandate that the narrow object of acquiring, holding, voting, or disposing of securities must itself serve a broader purpose of seeking corporate control or otherwise exerting influence over corporate affairs. *Id.* The purpose of § 13(d) is to alert the market to large acquisitions that threaten "*potential* shift[s] in corporate control." *See id.* (citing *GAF Corp. v. Milstein*, 453 F.2d 709, 717 (2d Cir.1971)) (emphasis in original). The Second Circuit further reasoned that "requiring an *actual* control purpose would disserve this function insofar as it would prevent shareholders from revaluing their holdings, and hinder incumbent management from adopting an appropriate strategy, in advance of an actual takeover attempt." *Id.* (citing *Mosinee Paper Corp.*, 500 F.2d at 1016 (emphasis in original)).

■ This Court concludes that *Quintel* is applicable and controlling of the issue here. Therefore, to sufficiently plead the existence of a § 13(d) group, Schaffer is not required to allege that a common objective of actual corporate control existed among the defendants, but simply that the defendants acted together in furtherance of a common objective with regard to ac-quiring, holding, voting or disposing of securities of the Company. In her Amended Complaint, Schaffer alleges that Defendants acted in concert with the commonly held objective to acquire, hold and dispose of securities issued by the Company. The Court is therefore satisfied that Schaffer has met the minimal standard of pleading set forth in Fed.R. Civ.P. 8(a).

## III. PREFERRED STOCK

■ Defendants also contend that non-voting convertible preferred stock is exempt from the term "equity securities" as defined under § 13(d) of the Act. They argue that a § 13(d) group is formed only when there is an agreement with respect to voting securities and that even if Defendants acted together with regard to non-voting convertible preferred stock, as Schaffer alleges, Defendants would not constitute a § 13(d) group for purposes of § 16(b) liability. This Court is not persuaded, as Defendants suggest, that it is necessary to compartmentalize classes of securities or to hold non-voting securities as per se exempt from the term "equity securities" under § 13(d).

In *Morales v. New Valley Corp.*, 936 F.Supp. 119 (S.D.N.Y.1996), *aff'd, Morales v. Freund*, 163 F.3d 763 (2d Cir.1999), the plaintiff, like Schaffer, brought an action pursuant to § 16(b) of the Act, seeking disgorgement of short-swing profits earned in transactions involving Class B cumulative convertible preferred stock of New Valley Corporation. The defendants moved to dismiss the complaint arguing, like Defendants here, that the convertible shares did not constitute a "class" of security for purposes of § 16(b) and that they were not liable under that section as "beneficial owners of any class of security." *See id.* at 122. The defendants claimed that overall voting control is what subjects

an owner of securities to liability under § 16(b). *See id.* at 123.

Judge Haight of this Court disagreed with the defendants and held that a class of convertible preferred stock constituted a separate "class" of securities for purposes of § 16(b) of the Act imposing liability for short swing profits, and therefore denied defendants' motion. The district court also noted the following section from an SEC release, which suggested that the preferred stock at issue did not preclude the defendants from being beneficial owners of common stock of the Company:

> In contrast to a convertible debt, a security that is an equity security in its own right, as well as on account of a conversion feature, would require a double calculation. For example, if a class of voting preferred stock registered under Section 12 is convertible into Section 12 common stock, the beneficial owner of the preferred stock is deemed the owner of both the preferred stock and the underlying common stock...*If the convertible preferred stock is non-voting, the preferred stock is not a separate class of equity securities for the purposes of the ten-percent holder calculation, because Rule 13d.3(d)(1) excludes non-voting securities; therefore, the beneficial owner of the non-voting preferred stock, like a holder of convertible debt, performs the ten percent holder calculation only with respect to the underlying stock.*

*Id.* at 124 (citing Ownership Reports and Trading by Officers, Directors and Principal Security Holders Exchange Act Release No. 28, 869, 48 SEC Dock. 216, 220 n. 6, Fed.Sec.L.Rep. (CCH) ¶ 84, 709 (Feb. 8, 1991)) (emphasis added).

Based on the foregoing document, the *Morales* court concluded that calculation of how much stock the defendants beneficially owned would be determined by the amount of common stock that such non-voting preferred stock would yield upon conversion. Therefore, it appeared unlikely that the SEC meant to exclude non-voting securities indefinitely from term "equity securities" under § 13(d). Rather, the underlying common stock which is yielded from non-voting securities is the only stock which is calculated for purposes of § 16(b) liability, whereas, there is a double count for convertible voting preferred stock. *See id.*

On appeal, the Second Circuit affirmed the district court's ruling. *See Freund,* 163 F.3d at 765–66. The Circuit Court additionally noted:

> The existence of a group under § 13(d) and § 16(b) is not confined to the particular security that makes it a group; it extends to all securities issued by the issuer of that security. Veritovtrade and the Holders made an agreement regarding the Acquisition of New Valley common stock; they are therefore a group with regard to all of New Valley's equity securities, including the B preferred.

*Id.* at 766.

■ Applying the Second Circuit's ruling in *Morales,* this Court holds that the stocks in question here are not *per se* exempt from § 13(d). Espousing Defendants' suggestion would be inconsistent with the purpose of § 13(d). That objective is to "alert the marketplace to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control." *See Quintel,* 249 F.3d at 122 (citing *GAF Corp. v. Milstein,* 453 F.2d 709, 717 (2d Cir.1971)); *accord SEC v. Savoy Indus., Inc.,* 587 F.2d 1149, 1167 (D.C.Cir.1978). The group activity Schaffer alleges, the acquiring and dispensing of a considerable quantity of preferred stock, would present a potential

shift in corporate control, which reflects a paramount concern of § 13(d). ·

## IV. SUFFICIENCY OF THE AMENDED COMPLAINT

This Court, in its previous Decision and Order, pointed out certain deficiencies contained in Schaffer's original complaint. The Court provided broad guidelines for what may be alleged by Schaffer to satisfy the pleading requirements, noting that, "Schaffer advances no allegations of interrelationships, contracts, alliances, meetings, agreements, coordinated activity, or understandings between or among any of the defendants regarding the conversion of preferred shares, the sale of common stock upon conversion or any other issue... Simply put, there is no evidence before the Court that defendants agreed to combine efforts in furtherance of any commonly held objective." *See Schaffer v. CC Investments,* 115 F.Supp.2d at 443.

The Court is satisfied that Schaffer's Amended Complaint addresses these shortcomings. In her new pleadings, Schaffer alleges that Defendants' commonly held objective was to acquire, hold, and dispose of equity securities issued by the Company. *See* Am. Compl. ¶ 26. There are numerous allegations of coordinated activity or concerted actions toward that goal:

26. At all relevant times, all of the defendants acted together for the purposes of acquiring holding and disposing of equity securities issued by the Company... all of the defendants collectively purchased 100% of the Preferred Stock...

27. Thus... in consideration for defendants' consent ... defendants, as a group, negotiated for, and received a put option to sell 351 preferred shares to the Company at a premium of 20%. The 16(b) Group also agreed collectively to a

damages provision which allowed the defendants to allocate any damages payments from the Company among themselves and anticipated that the parties would negotiate with Lasersight as a group...

28. In March 1998, defendants, as a group, entered into a Series B Preferred Stock Agreement... Pursuant to this Agreement, defendants collectively agreed not to convert their then current preferred stock holdings... In return for this agreement, defendants, as a group, extracted significant benefits from the Company...

29. Finally, ... all of the defendants, acting as a group, sold their remaining preferred shares to the Company at a premium of 20%...

30.... Through their combined efforts, the 16(b) group was able to leverage their collective ownership in order to extract substantial economic benefits from the Company...

Am. Compl. ¶¶ 26–30.

In light of the foregoing discussion, the Court is satisfied that Schaffer has met the pleading standard of Fed.R. Civ.P. 8(a). At this state of the proceedings, prior to discovery, and accepting these factual assertions as true, Schaffer is entitled to seek discovery to substantiate her claim. Accordingly, the Court denies each of Defendants' motions to dismiss. The Court will allow Schaffer to proceed in limited discovery on the matter of whether Defendants—Societe Generale, Castle Creek Partners and CC Investments, and the Stark Defendants—formed a group whose understandings and activities regarding Lasersight Securities violated § 13(d).

·

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion to dismiss of CC Investments, LDC and Castle Creek Partners, LLC is denied; and it is further

**ORDERED** that the motion to dismiss of Shepherd Investments International, Ltd., Stark International, Brian J. Stark and Michael A. Roth is denied; and it is further

**ORDERED** that the motion to dismiss of Societe Generale is denied; and it is further

**ORDERED** that the parties shall appear for a conference with the Court on August 9, 2001, at 10:30 a.m. at the United States Courthouse, 40 Centre Street, Courtroom 618, New York, New York.

**SO ORDERED.**