**Mark FEDER, Derivatively on behalf of Ivax Corporation, Plaintiff–Appellant,**

v.

**Philip FROST, Frost–Nevada, Limited Partnership, Defendants–Appellees.**

**Docket No. 99–7478**

United States Court of Appeals, Second Circuit.

Argued: Nov. 9, 1999

Decided: Aug. 7, 2000

Jeffrey S. Abraham, Law Offices of Jeffrey S. Abraham (Mitchell M.Z. Twersky, Fruchter & Twersky, of counsel), New York, New York, for Plaintiff–Appellant.

Gary W. Kubek, Debevoise & Plimpton, New York, New York (Peter W. Homer, Homer, Bonner & Delgado, P.A., Miami, Florida, of counsel, for Defendant–Appellee Frost–Nevada, Limited Partnership), for Defendants–Appellees.

David M. Becker, General Counsel, Jacob H. Stillman, Solicitor, Susan S. McDonald, Senior Litigation Counsel, Angel Yang, Attorney (Meyer Eisenberg, Deputy General Counsel, of counsel), Securities and Exchange Commission, Washington, D.C., filed an amicus curiae brief on behalf of the Securities and Exchange Commission.

Before: WINTER, Chief Judge, CARDAMONE, and STRAUB, Circuit Judges.

WINTER, Chief Judge:

Mark Feder appeals from Judge Owen's dismissal of his complaint, which alleged a violation of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Feder is a shareholder of IVAX Corporation and brought the suit derivatively on its behalf. His complaint alleged that appellee Philip Frost is a statutory insider of IVAX and that Frost and Frost–Nevada Limited Partnership ("FNLP"), a firm controlled by Frost, are controlling shareholders of North American Vaccine, Inc. ("NAVI"). He claims that Frost/FNLP must disgorge short-swing profits under Section 16(b) as a result of sales by NAVI of IVAX common stock and purchases by Frost/FNLP of IVAX stock.

The district court concluded as a matter of law that Frost/FNLP did not "realize" any profits from NAVI's sale of IVAX stock. *Feder v. Frost,* No. 98 CV 4744,

1999 WL 163174, at *2–3 (S.D.N.Y. Mar.24, 1999). We disagree and reverse.

## BACKGROUND

Because the district court dismissed the complaint on the pleadings, we take as true the allegations in the complaint. *See, e.g.,, Boyd v. Nationwide Mut. Ins. Co.,* 208 F.3d 406, 408 (2d Cir.2000). Those allegations were as follows.

Frost is Chairman and CEO of IVAX, a publicly owned corporation. The sole general partner of FNLP is a corporation, all of whose shares are owned by Frost. Frost, with FNLP, is the beneficial owner of 12.8% of IVAX's stock. Frost is also a director of NAVI, whose stock is publicly traded as well. Frost, with FNLP, owns 17.3% of NAVI's common stock.

In addition, Frost and FNLP are parties to a shareholders' agreement. The combined holdings of the parties to this agreement amount to 50.8% of NAVI's common stock. The parties nominate individuals to NAVI's board of directors and have "effective control" over NAVI. The complaint states, "As a result of these contractual arrangements and ... rights at law, Frost ... ha[s]: (1) Voting power which includes the power to vote, or to direct the voting of, NAVI securities; and/or (2) Investment power which includes the power to dispose, or to direct the disposition, of NAVI securities."

During various times in late 1995 and early 1996, Frost and FNLP purchased IVAX shares and NAVI sold IVAX shares. Appellant claims that Frost/FNLP were beneficial owners of the IVAX shares sold by NAVI for purposes of Section 16(b). He also contends that all purchases and sales by Frost, FNLP, and NAVI within six months of each other can be matched to determine profits, if any, by the standards applicable under Section 16(b). When matched, he alleges, they disclose substantial short-swing profits. Although these profits accrued to NAVI, appellant claims that they are attributable to Frost/ FNLP on a pro rata basis as a result of the increase in value of their NAVI holdings.

Frost/FNLP moved to dismiss under Fed.R.Civ.P. 12(b)(6) on the ground that he did not "realize" any profit from the transactions within the meaning of Section 16(b). Appellant countered that NAVI's stock sales are attributable to Frost/FNLP because, by virtue of the shareholder agreement, Frost/FNLP had control over NAVI's portfolio of securities and was therefore a "beneficial owner" of the IVAX shares held by NAVI pursuant to Rule 16a–1, 17 C.F.R. § 240.16a–1, adopted by the SEC in 1991.

The district court dismissed the complaint because it concluded that Frost/ FNLP did not "realize" any profits from NAVI's sales of IVAX stock. Conceding that the transactions increased the value of NAVI—and that Frost/FNLP may have benefitted from this increased value, *see Feder,* 1999 WL 163174, at *2—the court held that "[i]n a traditional section 16(b) case, the defendant would have cash in hand which the court might require him to disgorge. It is not entirely clear to me how this defendant could be required to disgorge this 'economic effect.'" *Id.*

The district court also rejected appellant's argument that Rule 16a–1(a)(2)'s definition of "beneficial owner" applies to the determination of whether profits from various purchases and sales have been realized for purposes of Section 16(b). *Id.* at *2 n. 6. The district court held that the Rule 16a–1(a)(2) definition "is to be used solely for determining whether a person" is a statutory insider and, because there was no dispute that Frost/FNLP is a statutory insider of NAVI, that definition was irrelevant.

This appeal followed. After oral argument, we asked the Securities and Exchange Commission (the "SEC" or "the Commission") to file an *amicus curiae* brief. In that brief, the SEC argued that the district court "misread[ ]" Rule 16a–1(a)(2) and mistakenly concluded that it

did not apply. The SEC also contended that, pursuant to the rule, the complaint sufficiently alleges a Section 16(b) violation. We agree.

## DISCUSSION

We of course review *de novo* a district court's dismissal of a complaint on the pleadings. *See, e.g., Boyd,* 208 F.3d at 409. Dismissal is "appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). We address only the narrow issue of whether Rule 16a–1(a)(2) validly renders Frost/FNLP a beneficial owner of the IVAX stock sold by NAVI who might "realize" a profit from the sale.

■ Section 16(b) of the Exchange Act seeks to prevent corporate insiders from making short-swing profits from transactions in the corporation's stock. Titled "Profits from purchase and sale of security within six months," it provides in relevant part:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer....

15 U.S.C. § 78p(b). "[L]iability under Section 16(b) does not attach unless the plaintiff proves that there was (1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.,* 156 F.3d 305, 308 (2d Cir.1998).

"The statute requires disgorgement to the company of any profit derived from the matching of any purchase and any sale of an 'equity security' ... within a six-month period by a statutory insider, irrespective of intent or whether overall trading during that six months (i.e., all sales and purchases combined) resulted in a loss." *Id.* at 308; *see also Gollust v. Mendell,* 501 U.S. 115, 121, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991) (quoting Section 16(b)). "No showing of actual misuse of inside information or of unlawful intent is necessary to compel disgorgement." *Magma Power Co. v. Dow Chem. Co.,* 136 F.3d 316, 320 (2d Cir.1998) (citing *Foremost–McKesson, Inc. v. Provident Sec. Co.,* 423 U.S. 232, 251, 96 S.Ct. 508, 46 L.Ed.2d 464 (1976); *Reliance Elec. Co. v. Emerson Elec. Co.,* 404 U.S. 418, 424 n. 4, 92 S.Ct. 596, 30 L.Ed.2d 575 (1972)). Rather, Section 16(b) "operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition." *Id.* at 320–21. The statute, therefore, "imposes liability without fault ... within its narrowly drawn limits." *Id.* at 321 (internal quotations omitted); *accord Gollust,* 501 U.S. at 122, 111 S.Ct. 2173 (explaining that Section 16(b) is strict-liability provision).

### a) *Rule 16a–1*

The Exchange Act does not define the term "beneficial owner." However, in 1988, the SEC proposed rules under Section 16 that, *inter alia,* contained such a definition. *See* Ownership Reports and Trading by Officers, Directors and Principal Stockholders, Exchange Act Release No. 34–26333, 53 Fed.Reg. 49997, 50001 (Dec. 13, 1988). The accompanying SEC release explained that the rules were being proposed in part because "[u]ncertainty as to the status of indirect interests in securities of the issuer, such as ownership of derivative securities and holdings of the immediate family, trusts, corporations, and partnerships, has raised requests for a def-

inition." *Id.* Two definitions of "beneficial owner" were deemed necessary by the Commission because of the different uses to which the term is put in Section 16. The first use is to determine who is a ten-percent beneficial owner and therefore a statutory insider. The second use is the determination of which transactions must be reported under Section 16(a) as effecting a change in beneficial ownership or as triggering liability under Section 16(b). *See id.; see also* Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34–27148, 54 Fed.Reg. 35667, 35670 (Aug. 29, 1989) ("The term 'beneficial owner' . . . would have two applications: one to determine who is subject to Section 16 and another to determine what holdings and transactions must be reported and subject to short-swing profit recovery.").

The rules were adopted in final form in 1991. *See* Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34–28869, 56 Fed.Reg. 7242 (Feb. 21, 1991). *See generally* Peter J. Romeo & Alan L. Dye, Developments Under Section 16, 1123 PLI/Corp 305, 309 (1999), 1051 PLI/Corp 317, 321–22 (1998), 940 PLI/Corp 275, 279–80 (1996), and 889 PLI/Corp 323, 325–26 (1995) (providing overview of rules). Relevant portions of Rule 16a–1 provide:

Terms defined in this rule shall apply solely to section 16 of the Act and the rules thereunder. These terms shall not be limited to section 16(a) of the Act but also shall apply to all other subsections under section 16 of the Act.

(a) The term *beneficial owner* shall have the following applications:

(1) Solely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the Act, the term "beneficial owner" shall mean any person who is deemed a beneficial owner pursuant to

section 13(d) of the Act and the rules thereunder;

. . .

(2) Other than for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities registered under Section 12 of the Act, the term *beneficial owner* shall mean any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities, subject to the following:

(i) The term *pecuniary interest* in any class of equity securities shall mean the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities.

. . .

(iii) A shareholder shall not be deemed to have a pecuniary interest in the portfolio securities held by a corporation or similar entity in which the person owns securities if the shareholder is not a controlling shareholder and does not have or share investment control over the entity's portfolio.

17 C.F.R. § 240.16a–1.

Rule 16a–1(a)(1) thus provides the definition of beneficial owner that "is used only to determine [insider] status as a ten percent holder." Exchange Act Release No. 34–28869, 56 Fed.Reg. at 7244 (using standards set forth in Section 13(d) of Exchange Act); *see also* Exchange Act Release No. 34–26333, 53 Fed.Reg. at 50001 (explaining that analysis of beneficial owner for purposes of ascertaining who is ten-percent holder turns on person's potential for control so that proposed new rule relies on Section 13(d) for deciding who is ten-percent holder). Once ten-percent status—or, of course, status as an officer or director—is determined, the definition of beneficial owner provided by

Rule 16a–1(a)(2) comes into play for purposes of the reporting and short-swing profit provisions of Section 16. Under Rule 16a–1(a)(2), "the term *beneficial owner* shall mean any person who, directly or indirectly ... has or shares a direct or indirect pecuniary interest in the equity securities...." 17 C.F.R. § 240.16a–1(a)(2). The term "pecuniary interest" is defined as "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." 17 C.F.R. § 240.16a–1(a)(2)(i). The pecuniary interest test was designed to "codify the courts' emphasis on pecuniary interests and deem that indirect pecuniary interests are sufficient to establish a reporting obligation and the potential for short-swing profit recovery with respect to those securities." Exchange Act Release No. 34–26333, 53 Fed.Reg. at 50001; *see also* Exchange Act Release No. 34–27148, 54 Fed.Reg. at 35670–71 (noting that "insider beneficially owns all shares in which the insider holds a direct or indirect pecuniary interest").

Securities owned by a corporation are assets affecting the value of that corporation's shares, and a shareholder does in that meaningful sense have at least an indirect pecuniary interest in portfolio securities. However, attributing a corporation's transactions in portfolio securities to all shareholders would clearly cast the net far too wide, and thus the Rule provides a "safe harbor"—actually a provision more in the nature of an exception—under which a shareholder is deemed not to have a pecuniary interest in a corporation's portfolio securities. Under the safe harbor, corporate transactions in portfolio securities are not attributed to a shareholder "if the shareholder is not a controlling shareholder of the entity and does not have or share investment control over the entity's portfolio." 17 C.F.R. § 240.16a–1(a)(2)(iii).

According to the SEC release accompanying the adoption of the Rule, the term "controlling shareholder" refers only to a shareholder with the power to exercise control over the corporation by virtue of his or her securities holdings. Exchange Act Release No. 34,28869, 56 Fed.Reg. at 7245 n.49. The release also stated that the rule does not distinguish between public and nonpublic corporations. *See id.* at 7245.

#### b) *The Merits*

The merits turn essentially on the answer to three questions: (i) does Rule 16a–1(a) render Frost/FNLP a beneficial owner of the IVAX stock sold by NAVI for purposes of triggering Section 16(b) liability; (ii) does the safe harbor protect Frost/FNLP from Section 16(b) liability as a matter of law; and (iii) if (i) is answered in the affirmative, and (ii) in the negative, is the Rule beyond the SEC's rule-making authority? We answer (i) in the affirmative and (ii) and (iii) in the negative.

■ With regard to whether Frost/FNLP was a beneficial owner of the IVAX stock traded by NAVI, we cannot agree with the district court that Rule 16a–1(a)(2) is irrelevant because Frost/FNLP's status as a statutory insider in NAVI is undisputed. Under the plain language of the Rule, its definition of beneficial owner applies for purposes "[o]ther than" determining whether a person is a beneficial owner of more than ten percent of any class of equity securities. 17 C.F.R. § 240.16a–1(a)(2). It is, therefore, of direct relevance to the issue of whether Frost/FNLP was a beneficial owner of the IVAX stock sold by NAVI for purposes of Section 16(b).

Rule 16a–1(a)(2)'s definition of "beneficial ownership" clearly encompasses the facts alleged in the complaint. The complaint alleged purchases and sales of IVAX's stock by Frost/FNLP and NAVI within a period of less than six months that resulted in a profit to NAVI. Given Frost/FNLP's ownership of stock in NAVI, Frost/FNLP had an indirect pecuniary interest in NAVI's IVAX stock because it shared indirectly in NAVI's profit

through an increase in the value of their NAVI holdings.

█ We must also reject Frost/FNLP's claim that Rule 16a–1(a)(2)(iii)'s safe-harbor provision—or exception—exempts Frost/FNLP from the definition of beneficial owner as a matter of law. We simply cannot determine at this stage in the litigation whether the safe harbor applies because appellant has alleged a shareholders' agreement that would support a finding that Frost/FNLP had working control, with others, over NAVI's portfolio. *See* Rule 16a–1(a)(2)(iii). Frost claims to have had no actual involvement in NAVI's decision to sell the IVAX stock, but that is clearly not a matter to be determined on a Fed.R.Civ.P. 12(b)(6) motion.

The argument that Rule 16a–1(a)(2) is invalid because any profit to Frost/FNLP was not "realized" relies heavily upon our decision in *Mayer v. Chesapeake Ins. Co.*, 877 F.2d 1154 (2d Cir.1989). In *Mayer*, we affirmed the dismissal of a Section 16(b) claim against an individual defendant as well as against certain companies that the individual defendant either owned or controlled. *See* 877 F.2d at 1155–56. As to the Section 16(b) liability of a shareholder of a corporation that trades in the securities of another corporation in which the shareholder is an insider, we stated:

> [I]n considering § 16(b) claims against an individual shareholder of a corporation that engaged in short-swing transactions in the shares of a registered company of which the individual was a director and hence an insider, the district courts have generally held that the insider's benefit as a director or as a shareholder of the transacting corporation was too indirect to make him responsible for disgorgement of profits under § 16(b).

*Id.* at 1160–61 (citing and discussing two district court cases). Based on the authorities discussed, including several SEC releases, we framed the issue as whether the defendants received any "direct benefit" from the sale of shares. We concluded

that no "direct benefit" was received. *Id.* at 1162.

In so concluding, we specifically rejected plaintiff's contention that because of the individual defendant's position and the interrelationships among all the defendants that they should collectively be deemed "joint beneficial owners" of the stock at issue. We rejected that argument because it would require us, "in effect, [to] engraft onto § 16(b) the contours of § 13(d) . . . [and s]ince the focus of § 13(d) is control, we have not viewed the group of persons who are subject to the strict liability imposed by § 16(b) for disgorgement of profits as congruent with the group of persons to whom . . . § 13(d) applies." *Id.*

We specifically acknowledged, however, that the SEC had not "in the past viewed the different thrusts of the two sections as warranting defining the two groups identically . . . [and a]s a result, different determinations of beneficial ownership under the section and rule are possible." *Id.* (internal quotations and citations omitted). We also noted that the SEC had recently proposed a "new rule [16a-l(a)], which would extend § 16(b) liability to insiders having merely an indirect pecuniary interest, *thereby changing existing law*, and perhaps unifying the concepts of beneficial ownership under §§ 16(a), 16(b), and 13(d) . . . ." *Id.* (internal citations omitted and emphasis added). But we determined that "the proposed rule does not govern the present case." *Id. Mayer* does not, therefore, suggest in any way that the proposed rule would be invalid as beyond the SEC's power.

█ We conclude that the SEC had the authority to promulgate Rule 16a–1(a) pursuant to its power to define "technical, trade, accounting, and other terms used in this chapter, consistently with the provisions and purposes of this chapter," 15 U.S.C. § 78c(b), or alternatively, pursuant to its power to issue rules "necessary or appropriate to implement the provisions of

[the Exchange Act]." 15 U.S.C. § 78w(a)(1).

Section 16(b) is a prophylactic measure designed to deter insider short-swing trading. *See* 15 U.S.C. § 78p(b). Promulgating a definition of "beneficial owner" that includes statutory insiders who have an indirect pecuniary interest in securities in no way undermines Section 16(b)'s objectives. *See C.R.A. Realty Corp. v. Crotty*, 878 F.2d 562, 565 (2d Cir.1989) (recognizing that 15 U.S.C. § 78c(b) gives the SEC the "power to define 1934 Act terms in [a] manner consistent with [the] Act"); *cf. Blau v. Lehman*, 368 U.S. 403, 411–12, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962) (rejecting interpretation of Section 16(b) urged by the SEC because it contravened plain meaning of statute and was explicitly considered and rejected by Congress). At worst, Rule 16a–1(a)(2) gives a slightly expansive reading to the term "profit realized," as used in Section 16(b), by extending it to increases in the value of shares of a corporation dealing in portfolio securities rather than limiting it to cash-in-hand profits. This reading, however, does not even strain the ordinary or natural meaning of "profit realized" and seems well within the Commission's discretion, although many wrinkles in interpretation and application may have to be confronted.

## CONCLUSION

We therefore reverse.