**Deborah DONOGHUE, as Executrix of the Estate of Richard Morales, Deceased, Plaintiff,**

v.

**NATURAL MICROSYSTEMS CORP. and Ronald Bleakney, Defendants.**

No. 01 CIV. 0708RWS.

United States District Court, S.D. New York.

April 16, 2002.

David Lopez, Southhampton, NY, for Plaintiff.

Choate, Hall & Stewart, Boston, MA (Kevin J. Lesinski, of Counsel), for Defendant Natural Microsystems Corp.

Ronald Bleakney, Stow, MA, Defendant Pro Se.

## OPINION

SWEET, District Judge.

Deborah Donoghue ("Donoghue"), as executrix of the estate of Richard Morales ("Morales"), has moved for summary judgment under Rule 56, Fed.R.Civ.P., granting the relief sought by her complaint, the recovery of short-swing profits arising out of the purchase and sale of shares of Natural Microsystems Corp. ("NMC") by defendant Ronald Bleakney ("Bleakney"), a former officer of NMC, appearing *pro se.* Upon the facts and conclusions set forth below, the motion is granted, and judgment will be entered in accordance with this opinion.

### Prior Proceedings

Donoghue filed her complaint in this action on January 29, 2001, pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), which provides for an issuer's recovery from an officer of "any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months . . . ." 15 U.S.C. § 78p(b).

Donoghue's motion for summary judgment was heard and marked submitted on January 16, 2002.

### The Facts

The facts as set forth in the Local Rule 56.1 Statement and the submissions of Bleakney are undisputed.

The common shares of NMC were registered under Section 12(g) of the Exchange Act, 15 U.S.C. § 78*l*(g).

Prior to March 15, 1999, Bleakney was Senior Vice President for Sales at NMC, and was responsible for directing sales activities for NMC in North America, South America, and Europe. On that date he tendered his resignation. He continued to bear the title of "Senior Vice President For Sales" at NMC, but the resignation was effectively accepted on March 22, 1999, after which time he had few or no substantive duties commensurate with the title.

Bleakney made the following purchases of NMC common stock on the dates, in the quantities, and at the prices, here shown:

| Date | No. of Shares | Price |
| --- | --- | --- |
| 10/30/98 | 400 | $7.6235/Share |
| 4/19/99 | 3,000 | $4.1250/Share |
| 4/19/99 | 2,000 | $4.2500/Share |
| 4/19/99 | 3,000 | $4.2500/Share |
| 4/20/99 | 2,000 | $4.0625/Share |
| 4/22/99 | 9,917 | $4.0938/Share |
| 4/30/99 | 400 | $4.1569/Share |

Bleakney made the following sales of NMC common stock on the dates, in the quantities, and at the prices, shown:

| Date | No. of Shares | Price |
| --- | --- | --- |
| 11/09/98 | 4,463 | $11.8750/Share |
| 11/09/98 | 1,000 | $12.1250/Share |
| 11/09/98 | 2,000 | $12.000/Share |
| 11/09/98 | 125 | $11.8750/Share |

NMC provided some guidance to employees concerning all executive/insider stock trading activities and guidelines in regard to rules and regulations of insider trading, including but not limited to Section 16(b). In Bleakney's dealings, including the transactions of April 20, 1999 and April 22, 1999, the issue of Sale and Purchase as relates to Section 16(b) was never raised. Bleakney relied upon the company's advice and believed his transactions to be in accordance with Section 16(b) rules and regulations, as further evidenced by the production of Form 4 by NMC agents and appropriate approval on such forms by NMC legal counsel.

On November 1, 2000, NMC made demand upon Bleakney for the payment to it of the short-swing profits which this suit seeks to recover.

Morales was a shareholder of NMC at the time of the filing of this suit, and upon his death and her qualification as executrix of his estate, and solely by operation of law, Donoghue became a shareholder of NMC.

Bleakney claims he paid $111,988 to NMC for the shares sold on November 9, 1998 for approximately $92,004, resulting in a net personal loss of $19,984. The purchases of April 20, 1999 and April 22, 1999 were not sold for more than a year after such purchase.

Based on the advice received from NMC, Bleakney believed that Section 16(b) was violated only by a purchase and sale realizing profit within a six month period.

### Discussion

### I. The Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a summary judgment motion, the court should credit the evidence of the nonmoving par-

ty, and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, when viewing the evidence produced in the light most favorable to the nonmovant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell v. City Univ.*, 894 F.Supp. 750, 758 (S.D.N.Y.1995) (*citing Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991)).

## II. *The Elements of a Violation of Section 16(b) Have Been Established*

Section 16(b) of the Exchange Acts precludes corporate insiders from making short-swing profits from transactions in the corporation's stock. It provides, in relevant part:

> For the purpose of preventing the unfair use of information which may have been obtained by such ... officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such ... officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.

15 U.S.C. § 78p(b). "The statute requires disgorgement to the company of any profit derived from the matching of any purchase and any sale of an 'equity security' ... within a six-month period by a statutory insider, irrespective of intent or whether overall trading during that six months (i.e., all sales and purchases combined) resulted in a loss." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir.

1998). For the statute to apply, it is not necessary to show any actual misuse of inside information or of any unlawful intent. *Feder v. Frost*, 220 F.3d 29, 32 (2d Cir.2000) (*citing Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320 (2d Cir. 1998)). "Rather, Section 16(b) operates mechanically, and ... imposes liability without fault ... within its narrowly drawn limits." *Feder*, 220 F.3d at 32 (internal quotations and citations omitted).

■ Here, facts demonstrate that a short-swing trading violation has occurred as a matter of law. Bleakney was a Senior Vice President with significant responsibilities in November of 1998, when he sold the shares at issue, and in October 1998, when he purchased 400 shares. In April 1999, when he purchased the bulk of shares at issue, he continued to hold that position. To the extent Bleakney's duties as an officer may have been reassigned or limited after his resignation on March 22, 1999, his actions after that date still fall within the scope of Section 16(b), for all of the sales sought to be matched with subsequent purchases indisputably occurred prior to the resignation. *See Arrow Distrib. Corp. v. Baumgartner*, 783 F.2d 1274, 1279 (5th Cir.1986); *Feder v. Martin Marietta Corp.*, 406 F.2d 260, 266–69 (2d Cir.1969); *see also Lewis v. Varnes*, 505 F.2d 785, 789 (2d Cir.1974) ("Section 16(b), in referring to purchases or sales by directors or officers, clearly relates to transactions in which at least one end (the purchase or sale) occurred while the director or officer held office."); *Lewis v. Bradley*, 599 F.Supp. 327, 329 (S.D.N.Y.1984) (acknowledging that "liability must attach" if sale occurred prior to resignation and purchase occurred after resignation, but finding no liability since both transactions had occurred subsequent to resignation).

The sales and purchases were within six months of one another, and the methodolo-

gy first announced in *Smolowe v. Delendo Corp.*, 136 F.2d 231, 237 (2d Cir.1943), *cert. denied*, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943), remains in effect as to the matching of transactions. As articulated by the Honorable Learned Hand in *Gratz v. Claughton*, 187 F.2d 46 (2d Cir.1951), *cert. denied* 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951):

> If one is seeking an equation of purchase and sale, one may take any sale as the minuend and look back for six months for a purchase at less price to match against it. On the other hand, if one is looking for an equation of sale and purchase, one may take the same sale and look forward for six months for any purchase at a lower price. Although obviously no transaction can figure in more than one equation, with that exception we can see no escape from what we have just said. It is true that this means that no director, officer, or 'beneficial owner' may safely buy and sell, or sell and buy, shares of stock in the company except at intervals of six months. Whether that is too drastic a means of meeting the evil, we have not to decide; it is enough that we can find no other way to administer the statute.

*Id.* at 52. *See also Morales v. New Valley Corp.*, 999 F.Supp. 470, 476 (S.D.N.Y.1998) (*citing Mayer v. Chesapeake Ins. Co.*, 877 F.2d 1154, 1164 (2d Cir.1989)).

■ Bleakney has urged an *in pari delicto* defense, arguing that NMC provided guidance to its employees concerning executive and insider stock transactions but did not caution him as to potential liability under Section 16(b). However, this and other such equitable defenses are generally not available in actions under Section 16(b). *See Roth v. Fund of Funds, Ltd.*, 405 F.2d 421, 422–23 (2d Cir.1968), *cert. denied*, 394 U.S. 975, 89 S.Ct. 1469, 22 L.Ed.2d 754 (1969); *see also Texas Int'l*

*Airlines v. Nat'l Airlines, Inc.*, 714 F.2d 533, 536 (5th Cir.1983) ("The case law uniformly rejects equitable defenses in section 16(b) cases.") (*citing Roth*, 405 F.2d at 422–23; *Magida v. Cont'l Can Co.*, 231 F.2d 843, 846 (2d Cir.), *cert. denied*, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956); *Tyco Laboratories, Inc. v. Cutler–Hammer, Inc.*, 490 F.Supp. 1, 8 (S.D.N.Y. 1980); *Cutler–Hammer, Inc. v. Leeds & Northrup Co.*, 469 F.Supp. 1021, 1023 (E.D.Wis.1979)). In fact, equitable defenses have been rejected in this Circuit even where the issuer participated in the transaction and where a transaction occurred at the incentive of the issuer. *See Roth*, 405 F.2d at 422–23; *Magida*, 231 F.2d at 846. Bleakney's claim that he should not be liable because of NMC's omissions is therefore unavailing.

■ Bleakney has also sought to invoke the "unorthodox transaction" doctrine. This defense refers to a relatively narrow exception in Section 16(b) cases in which courts, applying a pragmatic approach in imposing Section 16(b) liability, consider the insider's opportunity for speculative abuse. *See Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973).

In applying the "unorthodox transaction" doctrine, courts have weighed factors such as (i) whether the transaction involved a purchase of stock for cash; (ii) whether the insider had access to inside information regarding the transaction; and (iii) whether the insider lacked control over the timing and circumstances of the transaction. *See, e.g. Kern County*, 411 U.S. at 595, 93 S.Ct. 1736; *Colan v. Mesa Petroleum Co.*, 951 F.2d 1512, 1523–24 (9th Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *Texas Int'l Airlines*, 714 F.2d at 539; *Morales v. Gould Investors Trust*, 445 F.Supp. 1144, 1149 (S.D.N.Y.1977); *Makofsky v. Ultra*

*Dynamics Corp.,* 383 F.Supp. 631, 640 (S.D.N.Y.1974).

The only unorthodox aspect of the transactions in this case was the ignorance of both NMC and Bleakney. Bleakney purchased and sold at times of his own choosing. He was not entrapped by a merger or similarly imposed surrender or acquisition of shares into an involuntary premature matching transaction. There is no basis in fact or law for treating Bleakney's action as implicating the "unorthodox transactions" doctrine.

### *The Calculation of Damages*

■ It is of no consequence for Section 16(b) purposes that Bleakney's transactions, in the aggregate, resulted in a net loss. *See Makofsky,* 383 F.Supp. at 638–39. Under the applicable authorities listed above, *see, e.g., Gratz,* 187 F.2d at 52; *Smolowe,* 136 F.2d at 237, Bleakney's profits are computed from the record using the "Lowest–In, Highest–Out" method, arbitrarily matching his highest-priced sales transactions with the lowest-priced purchases containing the same number of shares:

Sales:

| Date | No. of Shares | × Price | |
|------|------|------|------|
| (1) 11/09/98 | 1,000 | × $12.125/Share = | $12,125.00 |
| (2) 11/09/98 | 1,000(of 2,000) | × $12.000/Share = | $12,000.00 |
| (3) 11/09/98 | 1,000(of 2,000) | × $12.000/Share = | $12,000.00 |
| (4) 11/09/98 | 4,463 | × $11.875/Share = | $52,998.13 |
| (5) 11/09/98 | 125 | × $11.875/Share = | $ 1,484.38 |
| | | Total = | $90,607.51 |

Purchases:

| Date | No. of Shares | × Price | |
|------|------|------|------|
| (1) 4/20/99 | 1,000(of 2,000) | × $4.0625/Share = | $ 4,062.50 |
| (2) 4/20/99 | 1,000(of 2,000) | × $4.0625/Share = | $ 4,062.50 |
| (3) 4/22/98 | 1,000(of 9,917) | × $4.0938/Share = | $ 4,093.80 |
| (4) 4/22/98 | 4,463(of 9,917) | × $4.0938/Share = | $18,270.63 |
| (5) 4/22/98 | 125 (of 9,917) | × $4.0938/Share = | $ 511.73 |
| | | Total = | $31,001.16 |

Under this method, subtracting the total spent on purchases, $31,001.16, from the total gained in sales, $90,607.51, yields $59,606.35 as the total amount recoverable by the issuer.

■ Although his *in pari delicto* defense is unavailing, Bleakney has established that imposition of prejudgment interest in this instance would be inequitable. *See Morales v. Freund,* 163 F.3d 763, 767 (2d Cir.1999) ("[T]he question of whether such interest should be given in a particular case is within the discretion of the trial court.") (*citing Whittaker v. Whittaker Corp.,* 639 F.2d 516, 533 (9th Cir.1981), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981)). The record has not established the result of any sales of NMC stock after the April 1999 purchases and the equitable considerations here stem from the inadequate advice rendered to Bleakney by NMC.

### *Conclusion*

For the foregoing reasons, the motion for summary judgment is granted. Settle judgment on notice with costs awarded to Donoghue.

It is so ordered.