**Mark FEDER, derivatively on behalf of IVAX CORPORATION, Plaintiff,**

v.

**Philip FROST and Frost–Nevada Limited Partnership, Defendants.**

**No. 98 CIV. 4744(RO).**

United States District Court, S.D. New York.

Feb. 15, 2007.

Jeffrey S. Abraham, Abraham Fruchter & Twersky LLP, New York City, for Plaintiff Mark Feder.

Gary W. Kubek, Debevoise & Plimpton LLP, New York City, and Peter Homer, Homer Bonner, P.A., Miami, FL, for defendants Philip Frost and Frost–Nevada Limited Partnership.

## OPINION & ORDER

OWEN, District Judge.

Section 16(b) of the Securities Exchange Act of 1934 provides in relevant part:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer...

15 U.S.C. § 78p(b).[1]  Plaintiff Mark Feder, a shareholder of IVAX Corp. (a phar-

---

**1.** At the outset it is appropriate to keep in mind the Supreme Court's observation in *Foremost–McKesson, Inc. v. Provident Secs. Co.*, stating with reference to a provision exempting from 16(b) liability a transaction where the party was not a beneficial owner *both* at the purchase and sale of a security, "[i]t is inappropriate to reach the harsh result of imposing 16(b)'s liability without fault on the basis of unclear language.  If Congress wishes to impose such liability, we must assume it will do so expressly or by unmistakable inference."  423 U.S. 232, 252, 96 S.Ct. 508, 46 L.Ed.2d 464 (1976).

maceutical company), invokes this statute against defendants Philip Frost, CEO and Chairman of IVAX, and Frost–Nevada Limited Partnership (together, the "Frost Group") which Group, owning 12.8% of IVAX stock in the relevant period (late 1995 and early 1996), bought IVAX stock in the open market. In the same period, North American Vaccine, Inc. ("NAVI"), a separate pharmaceutical company in which the Frost Group owned 17.3% of its common stock,[2] had in its asset portfolio stock in other corporations, including some IVAX stock that had been contributed to it some time before as early-stage capital. NAVI, without Frost or the Group's involvement, sold some of its IVAX stock at a higher per-share price to third parties to raise capital for its operations,[3] which money on this record remained with NAVI. Based on these transactions by different entities, plaintiff seeks what he calls under 16(b) an eventual "short swing profit" to the Frost Group. Whereas the first opinion and order of this Court in 1999,[4] and the reversal by the Court of Appeals in 2000,[5] were only addressed to the complaint, this opinion now is based on substantial discovery which has filled in and materially altered the total picture. Plaintiff and defendants cross move for summary judgment.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Brink v. Union Carbide Corp.*, 41 F.Supp.2d 406, 413–14 (S.D.N.Y.1999); see also *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Section 16(b) provides for strict liability to IVAX where a plaintiff "proves that there was (1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Gwozdzinsky v. Zell/Chilmark Fund. L.P.*, 156 F.3d 305, 308 (2d Cir.1998). The statute requires disgorgement to the company "of any profit derived from the matching of any purchase and any sale of an 'equity security' ...within a six-month period by a statutory insider, irrespective of intent or whether overall trading during that six months (i.e., all sales and purchases combined) resulted in a loss." *Id.* While there is no dispute that the Frost Group purchased IVAX stock for itself in the open market and NAVI (without any Frost or Group control or participation, *see infra* ) sold IVAX stock to third parties from its portfolio within 6 months, the key question is whether the Frost Group as to NAVI's sale could be considered a beneficial owner of the said stock, which the law defines as

---

**2.** The Frost Group has a shareholder's agreement at NAVI with another pharmaceutical company, Biochem Inc., that, with their combined 50.8% ownership, enables them to elect the board. Plaintiff claims that this agreement renders the Frost Group *all by itself* a "controlling shareholder" of NAVI or gives it "working control" over NAVI's portfolio. I find neither of these, Indeed, Frost stated in a deposition that the purpose of the shareholders' agreement with Biochem "was just to assure that *neither* side would monopolize the company....that we were supposed to be

neutral with respect to control and not try neither to exercise control." Deposition of Phillip Frost at 44 (emphasis supplied). Indeed, this is but further justification for the applicability of the Supreme Court's observation in footnote 1, *supra.*

**3.** *See* Deposition of Sharon Mates at 58–69.

**4.** *Feder v. Frost*, 1999 WL 163174 (S.D.N.Y. Mar. 24, 1999).

**5.** 220 F.3d 29 (2d Cir.2000).

"any person who, directly or indirectly ... has or shares a direct or indirect pecuniary interest in [it]." 17 C.F.R. § 240.16a–1(a)(2).[6]

An SEC safe harbor "exception," the Second Circuit calls it, *Feder v. Frost*, 220 F.3d 29, 34 (2d Cir.2000), exempts a shareholder from being defined as a beneficial owner, if the shareholder (1) is not a controlling shareholder of the selling entity (NAVI) and (2) does not have or share investment control over NAVI's portfolio. *Feder*, 220 F.3d at 34 *quoting* 17 C.F.R. § 240.16a–1(a)(2)(iii).

■ As to the first element of the safe harbor, while the Frost Group is party to an agreement with another twice-as-large NAVI shareholder [7] that allows the parties together to nominate NAVI's board, other than that it has no operating or managerial powers and separately the Frost Group's total holdings are only 17.3% which is important here for the term "controlling shareholder" specifically "refers only to *a* shareholder with the power to exercise control over the corporation by virtue of *his* or her securities holdings," *Feder*, 220 F.3d at 34 *citing* Exchange Act Release No. 34,28869, 56 Fed.Reg. at 7245 n. 49 (emphasis supplied), so the Frost Group is not within the statutory definition of a controlling shareholder either by size or power. For the second element of the safe harbor, it is undisputed that Frost did not have or share investment control over NAVI's portfolio. While he was a director of NAVI, he was not an officer or manager of NAVI, and, as NAVI's president testified at a deposition, neither Frost nor his Group had or shared control over NAVI's portfolio. In addition, the undisputed evidence is that Frost specifically absented himself from the Board of Directors' meet-

ing and vote at which NAVI's president was authorized by the Board to sell stock from its portfolio, in which sale she, in her discretion, included some IVAX stock.

Accordingly, defendants Frost and the Frost Group are entitled to the Rule 16a–1(a)(2) safe harbor exception and are granted summary judgment which is conversely denied to plaintiffs.

Submit order on notice.

---

**6.** A "pecuniary interest," according to the Rule, is "the opportunity, directly or indirectly, to profit or share in any profit derived

from a transaction in the subject securities." 17 C.F.R. § 240.16a–1(a)(2)(i).

**7.** *See* footnote 2, *supra*.